S05A1422. R. D. BROWN CONTRACTORS, INC. v. BOARD OF EDUCATION OF COLUMBIA COUNTY et al.
(626 SE2d 471)

HINES, Justice.

R. D. Brown Contractors, Inc. ("Brown") appeals from the denial of its petition for an interlocutory injunction. For the reasons that follow, we affirm.

The Board of Education of Columbia County ("Board") issued an invitation for bids for the construction of a new school. Brown and McKnight Construction Company ("McKnight") each bid for the construction contract. The invitation for bids stated that bids would be "publically opened and read aloud" at 2:00 p.m., March 15, 2005. The invitation also stated that "[a]long with the bid a list of all major subcontractors . . . must be provided. No changes may be made to the list post-bid without prior approval from [the Board]." Additionally, the invitation stated that "[the Board] reserves the right to reject any

or all bids and to waive technicalities and informalities and to award the project on whatever basis is in the interest of [the Board]."

Both contractors submitted their bids on time; Brown's bid was $11,318,000 and McKnight's was $11,259,000. McKnight's bid, however, did not include a list of subcontractors and was initially rejected by the bid administrator. McKnight provided a subcontractor list by 3:45 p.m. that day, and at a later meeting, the Board voted to accept the McKnight bid.

Brown filed a petition requesting the superior court to issue a temporary restraining order, interlocutory and permanent injunctions against the Board to prevent it from proceeding with a contract with any entity other than Brown, a writ of mandamus to compel the Board to award the contract to Brown, and a declaratory judgment that Brown is entitled to the award of the contract.[1] The court issued a temporary restraining order. After a hearing, the court denied the request for an interlocutory injunction and vacated the temporary restraining order, determining that it was unlikely that Brown would prevail on the merits, and that delaying the construction of the school would impose "enormous consequences" on the citizens of the county.[2] Brown appeals from this ruling.[3]

"The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case. This power shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to." OCGA § 9-5-8. Brown contends that in denying the interlocutory injunction, the court, improperly, relied solely on its determination that Brown was unlikely to prevail on the merits of its suit. As noted above, the court also referenced the impact of a delay on the Board's operation of the public schools. Further,

> [a] trial court may grant an interlocutory injunction "to maintain the status quo until a final hearing if, by balancing the relative equities of the parties, it would appear that the equities favor the party seeking the injunction. [Cits.]" [Cit.] In establishing an equitable balance between the opposing parties, the likelihood of the applicant's ultimate success is

[1] The court granted McKnight's motion to intervene as a party defendant.

[2] The court found that the previously used school had been sold and would not be available for the 2006-2007 school year. The court also noted that it was not ruling on any claim for damages.

[3] The Board asserts that any issue of an injunction is moot because construction of the school under the contract with McKnight has begun. See *Inserection, A Fantasy Store v. City of Marietta*, 278 Ga. 170 (598 SE2d 452) (2004). Assuming that this appeal is moot, it falls into that class of cases which are capable of repetition yet evade judicial review. See *Collins v. Lombard Corp.*, 270 Ga. 120 (508 SE2d 653) (1998).

not the determinative factor. "The possibility that the party obtaining a preliminary injunction may not win on the merits at the trial does not *determine* the propriety or validity of the trial court's granting the preliminary injunction. [Cit.]" [Cit.] See also *Zant v. Dick*, 249 Ga. 799, 800 (294 SE2d 508) (1982) (rejecting the argument "that a substantial likelihood of success on the merits *must* be shown in order to entitle an applicant to interlocutory injunctive relief in the courts of Georgia.") (Emphasis supplied.) Although the merits of the case are not controlling, they nevertheless are proper criteria for the trial court to consider in balancing the equities. If the trial court determines that the law and facts are so adverse to a plaintiff's position that a final order in his favor is unlikely, it may be justified in denying the temporary injunction because of the inconvenience and harm to the defendant if the injunction were granted. [Cits.] Thus, in determining whether the equities favor one party or the other, a trial court *may* look to the final hearing and contemplate the results. [Cits.]

(Punctuation omitted; emphasis supplied.) *Garden Hills Civic Assn. v. MARTA*, 273 Ga. 280, 281 (1) (539 SE2d 811) (2000).

Public works bidding is regulated by Chapter 91 of Title 36 of the Official Code of Georgia. Determining whether the Board's action was lawful involves the interplay of three statutes therein. Under OCGA § 36-91-21 (b) (4), such a "contract shall be awarded to the lowest responsible and responsive bidder whose bid meets the requirements and criteria set forth in the invitation for bids. . . ." OCGA § 36-91-2 (12) defines "responsive bidder" as "a person or entity that has submitted a bid or proposal that conforms in all material respects to the requirements set forth in the invitation for bids or request for proposals."[4] Finally, OCGA § 36-91-20 (c) states that "[g]overnmental entities shall have the authority to reject any and all bids or proposals and to waive technicalities and informalities."

" 'This Court is to construe [statutes] to give sensible and intelligent effect to all of [their] provisions and to refrain from any interpretation which renders any part of the statute[s] meaningless.' [Cit.]" *Motors Acceptance Corp. v. Rozier*, 278 Ga. 52, 53 (1) (597 SE2d 367) (2004). The statement in OCGA § 36-91-21 (b) (4) that the contract go to one who "meets the requirements and criteria set forth in the invitation for bids" cannot mean that *every* statement in the

---

[4] There is no dispute that both Brown and McKnight are "responsible bidders" as defined in OCGA § 36-91-2 (11).

invitation for bids must be met precisely and without deviation; such a reading would render superfluous OCGA § 36-91-21 (b) (4)'s specification that the recipient also meet the definition of a "responsive bidder," and thus would render meaningless the definition of a responsive bidder as one whose bid "conforms in all *material respects* to the requirements set forth in the invitation for bids. . . ." (Emphasis supplied.) OCGA § 36-91-2 (12). The reference to "material respects" must be honored. Similarly, the provision of OCGA § 36-91-20 (c) that governments "have the authority to reject any and all bids or proposals and to waive technicalities and informalities," must be given effect; to read OCGA § 36-91-21 (b) (4) to mean that all terms stated in the invitation for bids must be met precisely would curtail the authority governmental entities are specifically given.

It is not the case that every provision in an invitation for bids must be strictly followed; a governmental entity retains its statutorily granted power to waive technicalities. See *Letchas v. Sims Asphalt Co.*, 250 Ga. App. 179, 180-181 (550 SE2d 721) (2001). Rather, the key to giving effect to each of the three relevant Code sections is OCGA § 36-91-2 (12)'s definition of a "[r]esponsive bidder" as one whose bid conforms to the invitation for bids "in all material respects." Clearly, some provisions of a bid may be considered immaterial, and constitute the sort of "technicalities and informalities" that the governmental entity can waive under OCGA § 36-91-20 (c).[5] The trial court did not err in concluding that the bid provision of a list of subcontractors was immaterial and could be waived.

The Board is vested with the power to conduct its affairs. See Ga. Const. of 1983, Art. VIII, Sec. V, Par. II; *Colston v. Hutchinson*, 208 Ga. 559, 560 (67 SE2d 763) (1951). And it appears that under the statutory scheme of public bidding, the Board has the power to determine, within the parameters of that scheme, what constitutes material conformity with the invitation for bids. Brown points to no statute, regulation, or ordinance that requires that subcontractors be listed on bids; the only place such a provision appears is on the invitation for bids produced by the Board. The invitation does not state, or suggest, that a list of subcontractors is a material requirement; in fact, the subcontractors provision specifies that the list of subcontractors may be changed with the Board's approval, suggesting that any list is not to be considered fixed. The invitation also reserved the right to waive technicalities, as authorized by State law. As the genesis of the specification concerning a list of subcontractors

---

[5] McKnight notes that the invitation for bids stated that bids must be accompanied by bid bonds, that the bonds must be accompanied by letters verifying the bonding companies' bond ratings, and that Brown's bid failed to include such a letter. As McKnight asserts, this is also the sort of technicality that the Board could waive.

is solely by the Board, we see no reason why the Board could not determine that it was not a material requirement, but rather a technicality that could be waived.

Such a reading is in furtherance of the public policy behind the statutory scheme of public bidding. In discussing the purpose of requiring bids for public projects, this Court has stated that the

> bid process . . . was designed to protect the public coffers from waste and to assure that taxpayers receive quality work and goods for the lowest possible price. Approval of a process which favors the acceptance of the lowest bid is a constant theme expressed in cases decided by this court.

*City of Atlanta v. J. A. Jones Constr. Co.*, 260 Ga. 658 (1) (398 SE2d 369) (1990). The Board's action here produced the lowest possible responsible price.[6] As the trial court queried, if awarding the contract to the lowest qualified bidder is not the intent of the statute, "why else would the public body be given the prerogative to 'waive irregularities and technicalities' to insure [sic] the underlying purpose of the statute was met?"

The trial court correctly found that it was unlikely that Brown would prevail on the merits, and did not abuse its discretion in denying the interlocutory injunction.[7]

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 13, 2006.

*Capers, Dunbar, Sanders & Bruckner, Paul H. Dunbar III*, for appellant.

*Fleming, Jackson, Ingram & Floyd, William M. Fleming, Tucker, Everitt, Long, Brewton & Lanier, John B. Long*, for appellees.

---

[6] There is no dispute that both Brown and McKnight are fully able to construct the school with "quality work." See *J. A. Jones Constr. Co.*, supra.

[7] Brown also argues that the court ignored any consideration of whether it had an adequate remedy at law. See *Hobbs v. Peavy*, 210 Ga. 671, 673 (4) (82 SE2d 224) (1954). However, it has such a remedy in an award of damages. See *J. A. Jones Constr. Co.*, supra.